# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS HALL, | ) | |
| Petitioner, | ) ) ) | |
| vs. | ) ) | Case No. 16 C 379 |
| MARK WILLIAMS, | ) ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

After a bench trial held in 2013, an Illinois judge convicted Louis Hall of two counts of delivery of a controlled substance—heroin—and sentenced him to two concurrent ten year prison sentences. Hall has petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, the Court finds that Hall's claims are procedurally defaulted and that he has not provided a basis to excuse the defaults. The Court therefore denies Hall's petition.

## Background

On August 23, 2012, Chicago police officer William Murphy set up surveillance of Hall after observing what he believed to be narcotics transactions in an alley on Chicago's West Side. Upon setting up surveillance in his patrol vehicle, Murphy observed four men convene spontaneously in an alley and form a line, with Hall standing at the front. Officer Murphy then saw Hall walk toward a nearby doorway, retrieve some items, and make hand-to-hand transactions with the men. In particular,

he observed each man hand to Hall an unknown amount of money in exchange for a then-unidentified object. Believing he had witnessed narcotics transactions, Murphy radioed for backup. Two Chicago Police Department patrol cars arrived on the scene, and officers detained Hall and the four men. Upon a search, the officers discovered that each man possessed an object (or several objects) that appeared to be narcotics, each identically wrapped.[1] An officer on the scene testified that he overheard Hall confess to selling heroin for someone named Tony.

On August 24, 2012, the state filed criminal complaints in the Circuit Court of Cook County, alleging four narcotics delivery charges—two for an amount of heroin less than one gram, and two for an amount of heroin more than one gram but less than fifteen grams. On September 25, the state filed an information in which it elected to charge only the two counts involving larger quantities. The information also alleged possession charges against two of the men in the alley—Eduardo Delbosque and Pedro Rivera—for possession of quantities of heroin just over one gram.

Hall appeared at a preliminary hearing on September 20, 2012, during which a Chicago Police Department officer—Officer Gutkowski—testified to the events leading up to Hall's arrest. Gutkowski had been in communication with Murphy during his surveillance of Hall and was one of the officers who moved in to arrest the suspects. After hearing Gutkowski's testimony, the presiding judge found that there was probable cause on the two charges Hall faced. *See* Pet. at 42. The judge also found probable cause on the charges against Delbosque and Rivera but made a finding of no probable cause for the other two purchasers. Id. at 30-31. Because the counts for delivery of less than one gram were not charged at that point, the judge did not make findings on

---

[1] Testing later revealed that the substance was heroin. At trial, the parties stipulated to this.

those charges.

After a bench trial, the judge noted that the evidence was largely circumstantial, as, he said, it tends to be in "any given case involving narcotics" absent an undercover sting. Trial Tr., Pet. at 84. The judge then summarized the evidence as follows:

> Murphy testified that he was driving around and saw the defendant Louis Hall making various transactions. He couldn't tell what they were. Basically, he saw various transactions, and he pulled over and conducted surveillance, before he pulls over, five or six purported transactions. He then pulls over to watch.
> He then sees, according to the testimony that I heard, Louis Hall set up a line, like in the alley more or less, and four or five male Hispanics approached the line, not all at once. They end up in the line at one time together.
> The defendant then leaves the line and goes to 3534 West Chicago at the rear door of the building, bends down, apparently picks up something . . . returns back to the line, and hands each of the four people, after they give him some money, hands them some items or object or objects, whatever.
> As it turns out, the stipulations were that each of the four guys had what turned out to be heroin. Each of the four packages were the same. A silver tinfoil packet with blue tape, all packets exactly the same, blue tape, silver packet taped to it. They're all receiving something from Louis Hall. And they all wind up with silver packets with blue tape, which turns out to be heroin.
> That would be rather unique, circumstantially, that those are narcotics they're getting from Louis Hall. They're giving him money. They get something in return. The cop can't actually see what it is at that point from that vantage point. Circumstantially, it's the same thing. Each of the four guys wind up with silver packets with blue tape. Each contained heroin.
> The odds would be in the quadrillions, get something from a guy, the same packaging, and they're getting it in a line from a person named Louis Hall. It doesn't make any sense giving Louis Hall money for something other than narcotics under those circumstances . . . .
> And then you add it together with the statement there was some impeachment about who was present, who said what supposedly, but impeachment in the case of people are approaching Louis Hall, giving him money, whatever amount they're giving him, who knows how much it was, for something in return. And the something in return circumstantially are the tinfoil packets on the blue tape.
> And then he also makes a statement as well, impeachment about who was present and who said what, which is impeachment on a collateral

3

> issue. What was the statement that he made, he was selling the drugs for another guy, make some money to make ends meet.
> However, what I will do is enter the finding of delivery on the Class 2, because there's four different people buying the drugs, and that was as to two. I am not going to pick out which I think had [which amount of drugs].

Id. at 84-86.

Hall then filed a direct appeal in the Illinois Appellate Court, arguing that his convictions violated Illinois' one-act, one-crime rule. Specifically, he argued that both counts alleg[ed] the exact same physical act . . . without specifying to whom the substance was delivered." Resp't's Ex. H, Br. and Arg. for Def.-Appellant  The appellate court found that the one-act, one-crime rule did not apply to Hall's case, noting that immediately after trial, the court and prosecutor agreed that Hall was charged with making two separate deliveries. *See People v. Hall*, No. 1-13-27141, at 3 (Ill. App. June 10, 2015). Hall then filed a petition for leave to appeal (PLA) in the Illinois Supreme Court, asserting the same one-act, one-crime argument. The Illinois Supreme Court ultimately denied his PLA. *See People v. Hall*, 42 N.E.3d 373 (2015) (Table).

While his appeal was pending, Hall filed a petition for relief from judgment under 735 ILCS 5/2-1401. Hall challenged the legality of his arrest, the adequacy of his attorney, the conduct of the prosecutor, and more. The state trial court rejected Hall's section 2-1401 petition, stating in a three-sentence notice that Hall was not entitled to relief as a matter of law. *See* Notice from Clerk of Cook County, Resp't's Ex. D. Hall did not appeal from this decision.

Later, while his direct appeal was still pending, Hall filed a post-conviction petition asserting the same arguments he had made in his section 2-1401 petition. The trial court denied the post-conviction petition and issued a lengthy opinion explaining the

4

ruling. *See* Order, *People v. Hall*, No. 12 CR 18069-01 (Cir. Ct. Cook Cnty.), Resp't's Ex. E.

First, the state court applied principles of *res judicata* in declining to review Hall's probable cause claim, noting that he had received a preliminary hearing during which a judge found there was probable cause to believe he had committed the charged offenses. *Id.* at 4-5. The court ruled in the alternative that Hall's probable cause claim would fail on the merits. *Id.* at 5-6. It then addressed Hall's argument that officer Murphy and an assistant state's attorney perjured themselves during the trial. The court ruled that neither allegation had merit, noting that Hall's assertions were refuted by the record and that the prosecutor had not testified under oath in any event. *Id.* at 6-10. The court then turned to Hall's argument regarding the sufficiency of the evidence. It held that this argument was not properly raised because it did not present a constitutional question and was therefore not cognizable under the Illinois Post-Conviction Act. *Id.* at 11. The court then examined the merits of the argument, concluding that even if it was a cognizable argument, it lacked merit. *Id.* at 11-13.

The state trial court next examined Hall's ineffective assistance of counsel claim. Hall contended that his trial counsel was ineffective because he did not call particular witnesses and did not identify the object that Hall passed to the four men in the alley. *Id.* at 13. The court held that Hall's claim was legally deficient because he had failed to submit affidavits from the proposed witnesses as required under state law. *Id.* at 14. The court also noted that at trial, the parties had stipulated that the objects Hall had passed to the four men contained heroin. *Id.* at 15. For these reasons, the state court ruled that Hall's ineffective assistance of counsel claims lacked merit. *Id.* at 16.

Hall also argued that his sentence represented unfairly disparate treatment as compared to sentences imposed on the individuals to whom he had sold heroin. The trial court found this argument frivolous in light of the fact that Hall was convicted and sentenced as a Class X offender due to his prior convictions, requiring a mandatory minimum sentence of six years. *Id.* at 16. Because the defendants who had purchased the heroin did not face this sentence enhancement, and because they were charged with possession, not delivery, the court concluded that the sentence disparity was warranted. *Id.* Finally, Hall asserted an argument concerning the state's alleged failure to comply with a plea bargain, but the court quickly disposed of that claim based on the absence of a plea bargain in Hall's case. *Id.* at 17.

In sum, the state trial court concluded that Hall's post-conviction petition was frivolous and lacking in merit. Hall did not appeal from the trial court's decision denying his post-conviction petition.

Hall has petitioned this Court for a writ of habeas corpus, asserting many of the claims he made in his post-conviction petitions, along with several new arguments. He has organized his claims under to four categories: police misconduct, ineffective assistance of counsel, "lachies[sic] violation against prosecutor" (which the court interprets as claim of prosecutorial misconduct), and trial judge misconduct / bias / "changing the letter of law." Pet. at 5-6.

Although Hall's petition purports to include four claims, respondent has identified eight distinct claims. As respondent sees it, Hall argues that: 1) his arrest violated his Fourth Amendment rights; 2) officer Gutkowski perjured himself; 3) the trial court's finding of probable cause on his delivery charges after finding no probable cause as to

the related possession charges violated double jeopardy; 4) Hall's trial counsel was ineffective for failing to call an unspecified witness; 5) trial counsel was ineffective for failing to move to dismiss the charges that corresponded to delivery of smaller amounts of heroin because they were "dropped at the preliminary hearing"; 6) the prosecution falsely represented to the court that Hall was carrying heroin when he was arrested; 7) his convictions on the class two charges following the previous finding of no probable cause on those charges violated due process and double jeopardy; and 8) the evidence was insufficient to support his convictions.

## Discussion

Before a federal court may address the merits of a habeas corpus petition from a state prisoner, the petitioner must give each level of the state's courts a fair opportunity to review his federal claims. 28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). When a petitioner has failed to properly assert his federal claims at each level of review in state court, those claims are procedurally defaulted. *See, e.g., Woods v. Schwartz*, 589 F.3d 368, 373 (7th Cir. 2009). Thus, whether a habeas corpus petitioner has procedurally defaulted a claim depends on whether he has failed to present the claim at the time and in the way required by state law. *Id.*; *see also Franklin v. Gilmore*, 188 F.3d 877, 881 (7th Cir. 1999).

Illinois law provides a two-tiered appellate review process. *See O'Sullivan*, 526 U.S. at 843 (describing Illinois' appellate review process). "Criminal defendants are tried in the local circuit courts, and although some criminal appeals . . . are heard directly by the Supreme Court of Illinois, most criminal appeals are heard first by an

intermediate appellate court." *Id.* If an appeal is unsuccessful, a defendant may file a petition for leave to appeal a decision to the Illinois Supreme Court, but that court has discretion in determining whether to consider the appeal. *Id.* Thus although a petitioner does not have a right to have the Illinois Supreme Court review his claims, he has a right to assert his claims before that court. *Id.*

The only claim that Hall presented all the way through the state appellate process was his state law one-act, one-crime argument. He abandoned his other claims after the state trial court denied his post-conviction petition; he did not appeal that decision to the state appellate court. This includes Hall's arguments that his arrest violated the Fourth Amendment, trial counsel was ineffective for failing to call an unspecified witness, the prosecution falsely represented that he was carrying heroin, and the evidence was insufficient to support his conviction. These claims are procedurally defaulted for purposes of federal habeas corpus review.

Hall's remaining claims consist entirely of arguments that he never raised in the state court, either on direct appeal or in his post-conviction petitions. It is well established that a petitioner who "fails to raise a claim in the state courts cannot thereafter raise it for the first time in a petition for writ of habeas corpus." *Dortch v. O'Leary*, 863 F.3d 1337, 1342 (7th Cir. 1988). In short, Hall has procedurally defaulted the claims that he failed to raise before any state court—in particular, his arguments that Officer Gutkowski perjured himself, the trial court violated principles of double jeopardy, and trial counsel was ineffective for failing to move to dismiss the lower-level charges.

Because Hall has procedurally defaulted all of his claims, the Court may not consider their merits absent an excuse for the defaults. *See, e.g.*, *Blackmon v.*

8

*Williams*, 823 F.3d 1088, 1099 (7th Cir. 2016). A court may excuse a procedural default if the petitioner shows cause for the default and actual prejudice arising from failure to raise the claim as required or that the failure to consider the claim will result in a fundamental miscarriage of justice. *See, e.g.*, *House v. Bell*, 547 U.S. 518, 536 (2006).

Hall argues that there is cause for the procedural defaults because his attorney's performance was so deficient that he could not have raised these arguments on appeal. But "the assertion of ineffective assistance [of counsel] as a cause to excuse procedural default in a § 2254 petition is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted." *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003) (citing *Edwards v. Carpenter*, 529 U.S. 446 (2000)). Although Hall asserted claims of ineffective assistance of counsel in his post-conviction petition, he did not appeal the denial of his post-conviction petition and thus procedurally defaulted ineffective assistance as an excuse for the procedural defaults of the claims he asserts here.

The second possible excuse for procedural default—miscarriage of justice—is a particularly high bar to pass. *See Blackmon*, 823 F.3d at 1099. "[T]he miscarriage of justice exception applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *Id.* To meet this standard, a habeas corpus petitioner must demonstrate "based on new, reliable evidence, that in light of new evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *Id.* Hall has not asserted a miscarriage of justice argument, and the Court sees no facts that might point to one.

Because Hall has not established a basis to excuse the procedural default of all

of his claims, the Court may not review them on the merits. In addition, the Court declines to issue a certificate of appealability (COA). When, as in this case, a court has denied a habeas petition on procedural grounds, it should issue a COA if the petitioner shows that reasonable jurists would find it debatable whether the petition stated a valid claim on the merits *and* would also find debatable the correctness of the court's procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). In this case, the issue of procedural default is not debatable; there is no question that Hall failed to preserve his claims by asserting them in and all the way through the state appellate process.

**Conclusion**

For the foregoing reasons, the Court directs the Clerk to enter judgment dismissing the petition for habeas corpus. The Court also declines to issue a certificate of appealability.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 24, 2016